**In re NORTH PORT ASSOCIATES, INC., Debtor.**

**In re NORTH PORT GOLF ASSOCIATES I, L.P., Debtor.**

**Bankruptcy Nos. 93–46630–399, 94–43766–399.**

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

May 31, 1995.

Steven Goldstein, St. Louis, MO, for debtors.

J. Dennis O'Leary, Dubail, Judge, P.C., St. Louis, MO.

Bonnie Clair, Office of U.S. Trustee, St. Louis, MO.

Steven Ginther, Mo. Dept. of Revenue, General Counsel's Office, Jefferson City, MO.

Francis X. Buckley, Jr., Thompson & Mitchell, St. Louis, MO.

David Going, Armstrong, Teasdale, Schlafly & Davis, St. Louis, MO.

Ried F. Holbrook, Thomas E. Osborn, Kurt S. Brack, Kansas City, KS.

John G. Young, Jr., Blumenfeld, Kaplan & Sandweiss, P.C., Clayton, MO.

Stephen L. Kling, Jr., Jenkins, Kling & Sauerwein, St. Louis, MO.

David M. Dare, Kramer & Frank, St. Louis, MO.

James C. Mordy, Marc E. Elkins, Morrison & Hecker, Kansas City, MO.

Milton P. Goldfarb, Newman, Goldfarb, Freyman, Stevens & Klein, St. Louis, MO.

## MEMORANDUM OPINION AND ORDER

BARRY S. SCHERMER, Chief Judge.

### INTRODUCTION

Before the Court are two motions: one brought by a third party beneficiary of a real estate sale contract against the seller (Debtor) and buyer seeking specific performance; and the other brought by the buyer seeking rescission of the same contract.

### JURISDICTION

This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. The parties have stipulated that this is a "core proceeding" which the Court may hear and enter appropriate judgments pursuant to 28 U.S.C. § 157(b)(2)(N) & (O).

## STATEMENT OF FACTS

This matter came before the Court on motions filed by Great Southern Bank ("Bank"), and Ozark Global, L.C. ("Buyer"). Each of the motions concern a contract to sell property of two related Chapter 11 debtors to Buyer. A hearing was held May 18, 1995 at which time the Court heard extensive testimony concerning the failure of parties to perform under the contract and took the matter under advisement.

The debtors in this action are North Port Associates, Inc., and North Port Golf Associates I, L.P. (collectively "Debtors"). Each of the Debtors own property which together make up an 18 hole golf course and club house ("Golf Course").[1] Bank is the principal secured lender on the Golf Course and estimates its debt on the property at approximately $2.75 million. Debtors and Buyer[2] entered into a contract dated January 26, 1995,[3] ("Contract"), for the sale of the Golf Course for $3.75 million. The Contract contains several express provisions relevant to the issue here. Paragraph 2 of the Contract provides that Buyers shall tender a check for $500,000 upon execution of the Contract which shall serve as a deposit. Paragraph E of the Addendum reads:

> The Buyer agrees that in the event the closing contemplated by this Contract does not occur on or before May 15, 1995, the Deposit shall be forfeited and be non-refundable unless one of the following events occurs: ... (ii) the Sellers fail to deliver a Special Warranty Deed for the Great Southern lien property.

Finally, paragraph 7 of the Contract states "[i]t is agreed by the parties hereto that time is of the essence with regard to this Contract."

The Debtors and Buyer sought the Court's approval of the Contract by filing the "Joint Motion for Order Approving Sale Procedures and Termination Fee and Sale of Certain Assets Associated with Operation of Golf Course," pursuant to § 363(b) of the Bankruptcy Code.[4] At the several hearings on the Motion for Authority to Sell, the Court worked closely with the parties attempting to settle all issues necessary to effectuate closing of the transaction. The Court also took care to determine that the standards for a sale under § 363(b) were met in that there was complete and timely notice to all creditors including those asserting liens in the real estate subject to the sale and that the price was a fair price. Upon extensive findings, the Court entered an Order Approving Sale of Assets on May 9, 1995, ("Order Approving Sale of Assets" or "Order"), six days prior to the scheduled closing on the Contract.[5]

On the date set for closing, the Buyer tendered the balance of the purchase price, $3.25 million, fully performed under the terms of the Contract, and made proper demand for a Deed to the Golf Course. The Debtors failed and refused to produce the Deed. The Debtors' action occurred because of issues concerning contemplated future business relationships which were not part of the Contract, but which Debtors felt were essential to resolve prior to closing.[6] Examples of these allegedly necessary business transactions include: Debtors' access to and use of the irrigation system for the practice facility which was not to be sold; removal of golf carts or an agreement to assume the lease on the cart fleet by the Buyer; kitchen and restaurant equipment in the club house which would remain property of one of the

---

1. The property involved in this transaction comprises more than the golf course and the club house, but for purposes of this Memorandum Opinion and Order, it is not necessary to specify every element of the property subject to the contract for sale.

2. The buyer was originally Mers, Inc. which later assigned its interest to Buyer. The principals of each entity are the same.

3. The Contract includes an Addendum ("Addendum"), dated February 17, 1995.

4. 11 U.S.C. §§ 101—1330. All references are to Title 11 unless otherwise noted.

5. The Bank insisted throughout the § 363(b) hearings that the closing take place no later than May 15, 1995, (the date specified in the Contract). It had previously obtained an order for relief from the § 362(a) stay if the closing did not take place by May 15, 1995.

6. The Debtors would retain some of the real estate surrounding the golf course.

Debtors despite the Contract to sell the club house; golf merchandise and liquor inventory owned by the Debtors and located in the club house; and business and liquor licenses held by the Debtors, none of which were subject to sale under the Contract.[7]

Bank, which would have possibly been paid in full because of the sale, brought a motion in each Debtors' case seeking to Compel the Sale of Golf Course Assets. Buyer filed a Motion for an Order of Refund of Security Deposit and an Order Setting Aside Order Approving Sale of Assets. At the hearing, the Buyer indicated that it was unwilling to be compelled to close the Contract because time was of the essence in closing the Contract and the Debtors failed to perform. The Buyer instead seeks rescission of the Contract and recovery of the $500,000 earnest money deposit.

## DISCUSSION

There are two issues which merit discussion: 1) what is the effect of a Court Order Approving a Sale pursuant to § 363(b); and 2) does the Debtors' failure to timely tender the Deed to the Golf Course on the date specified in the Contract which states that time is of the essence, constitute grounds for rescission by the Buyer when it has fully performed.

### I. Effect of a Court Order Authorizing a Sale under § 363(b).

Counsel for the Bank as well as counsel for all creditors of the estates affected by this sale argue that the parties are bound to perform pursuant to the Court's Order Approving Sale of Assets.[8] The Bank wants the Court to order the parties to close immedi-

ately. The Order, the Bank contends, binds the parties to perform. Relief from the Order is only available through appeal. Non-performance by one party does not relieve performance of the other party. The appropriate remedy, according to the Bank and the other creditors who appeared at the hearing, is to compel the Debtors to perform, not to permit the Buyer to rescind the Contract.

In support of its argument, Bank points to several cases in which bankruptcy courts have either ordered non-performing parties to specifically perform the contract or have awarded damages for non-performance.[9] Each of these cases call into question the binding effect of an order pursuant to § 363.

■ Some of the cases take the bold position that the bankruptcy court's role is that of the seller. *See e.g. In re Pizazz Disco & Supperclub, Inc.,* 114 B.R. at 107 ("The Court is the actual vendor in a bankruptcy sale"). Such a reading of § 363 would find the Debtors in this case to be in contempt of the Order Approving Sale of Assets. This Court, however, views § 363 differently in a chapter 11 context.

■ The language of § 363, as well as its function in the reorganization process, speaks to the *circumstances* under which a debtor or trustee may sell property and the type of notice and hearing which must be provided. Section 363 does not make the court the vendor, but rather it governs the circumstances in which a court may authorize a sale.[10] Section 363(b)(1) simply requires notice and a hearing before the trustee may use, sell or lease property of the estate other than in the ordinary course of business. The

7. The Debtors also assert that they had a fiduciary duty to creditors of their estates to resolve these issues prior to closing.

8. Bank asserts that its position to compel the sale, through either the Order Approving Sale of Assets or through the Contract, is derived under the theory that Bank is an intended third party beneficiary of the Contract and Order and thus can seek a remedy—compelling the sale or specific performance—usually available only to the parties of a contract. The Bank's standing to bring its motion was not contested and the Court makes no ruling on this issue.

9. The Bank submitted a list of the following cases involving the effect of a § 363 order: *In re Winston Inn & Restaurant, Corp.,* 120 B.R. 631 (E.D.N.Y.1990); *In re Oyster Bay Cove, Ltd.,* 161 B.R. 338 (Bankr.E.D.N.Y.1993); *In re Pizazz Disco & Supperclub, Inc.,* 114 B.R. 104 (Bankr. W.D.Pa.1990); *In re Rosecrest Enterprises, Inc.,* 80 B.R. 354 (Bankr.W.D.Pa.1987).

10. *See* Collier on Bankruptcy "[I]t is clear that Rule 6004 [which applies to § 363] does not contemplate judicial involvement in the sale." 2 Collier on Bankruptcy § 363.03 at 363–18, 19 (15th ed. 1983).

most common event will be notice and a hearing to the lienholder, thus ensuring that the interests of the estate in selling the property and the interest of the affected creditors will be protected.[11] Therefore, the Order Approving Sale of Assets is simply, an order finding that the Contract meets the requirements of § 363 and granting the Debtors authority to sell according to the terms of the Contract.[12] The language of the Order itself further underscores its intended purpose. The Order is styled "Order Approving Sale of Assets." Paragraph 3 of the Order uses the words "Debtor may sell" and paragraph 11 states "Debtors are authorized."

The cases cited by the Bank are also distinguishable on their facts. *Winston Inn, Oyster Bay, Pizazz Disco,* and *Rosecrest Enterprises,* all involved situations where the purchasers at the sale failed to perform and the seller sought performance or damages. The courts upheld the § 363 order finding that the prospective purchaser cannot collaterally attack the order.

In this case, the Debtors failed to perform and Buyer seeks relief from the Order Approving Sale of Assets rather that performance. The Buyer is not attempting to collaterally attack the Order because the Buyer is actually seeking relief from the Contract and is not contesting the circumstances under which the Court approved the sale. The remedy the Buyer is seeking is entirely consistent with the Contract (see paragraph E of the Addendum) and in no way attempts to question the procedures and representations made in obtaining the Order Approving Sale of Assets.

Additionally, the Bank's citation to *Rosecrest Enterprises,* is not persuasive. That case is further distinguishable because it involved a sale where there was never a signed agreement by either party, thereby giving the § 363 order in that case both the effect of an order approving the sale and a contract binding upon both parties. 80 B.R. at 355. Here, there is an agreement signed by the parties and there is no need to view the Order Approving Sale of Assets as contractually binding on the parties.

■ Indeed the cases cited by the Bank may not even stand for the proposition for which the Bank has cited them. In *In re Oyster Bay Cove, Ltd.,* 161 B.R. at 343, the bankruptcy court declined to overturn the § 363 order and compelled the sale based on the underlying "'Terms and Conditions of Sale' specifying that the property was being offered 'as is.'" This Court is persuaded that this same process should be employed in this case—view the Order Approving Sale of Assets as simply an order approving the Contract, and resolve the dispute based solely upon the language of the Contract and applicable state law.

■ In summary, contrary to the Bank's interpretation that the Order Approving Sale of Assets mandates performance or that the Order sets forth the required performance, the Court views the Order Approving Sale of Assets as: 1) meeting the requirements of § 363(b); and 2) approving the Contract. It is the terms of the Contract which govern the performance of the parties.

## II. Breach of the Contract and the Time of the Essence Clause.

Having determined that the Court cannot compel performance based upon the Order Approving Sale of Assets, the next issue is whether the Contract provides a remedy: to the Bank—as a third party beneficiary—for specific performance; or to the Buyer for rescission and return of the $500,000 deposit.

---

**11.** Under § 363(f), for example, sales of encumbered property are performed by the trustee or debtor in possession not by the court. It is clear from this subsection that the court's role is to ensure that the sale meets or exceeds the protections afforded to the lienholder by virtue of § 363(f)(1)—(5).

**12.** Although there is no Eighth Circuit Court of Appeals case which addresses this issue, language in previous Court of Appeals decisions indicate that it is the bankruptcy court's duty to adhere to the stringent requirements of sale under § 363 before authorizing the debtor to sell. "Before authorizing the trustee to sell the grain, the bankruptcy court was to 'carefully consider the requirements of section 363(f) and the duty under the Code to protect the property of third parties.'" *Lindsey v. Ipock,* 732 F.2d 619, 622 (8th Cir.1984) *citing State of Missouri v. United States Bankruptcy Court,* 647 F.2d 768, 778 (8th Cir.1981).

At the hearing on this matter, Buyer indicated that it opposed Bank's efforts to compel performance because the Contract specified that time was of the essence. The Buyer's principal, Mr. Scheffel, elaborated the Buyer's position on direct examination:

O'Leary[13]: Are you asking for your money back as a result of the closing not having taken place for the reasons set ...

Scheffel: That, that is correct.

O'Leary: And why are you asking for your money back?

Scheffel: We have a different situation now. We are in the middle of the season. There are things that need to be done down there and I'm concerned that the economic benefit has gone downhill. We had arrangements made at that time, we got to make arrangements for the money again. I understand from Bob's son that there's fertilizing that needs to be done in the middle of May and the last I knew that had not been ordered and I'm concerned about the course. It's also, the service has gone down there. (FURTHER TESTIMONY STRICKEN AS HEARSAY PER OBJECTION)

...

O'Leary: Did you incur any expenses in connection with trying to close this deal?

Scheffel: Yes, Sir.

■ Contracts for the sale of real property invoke the application of state law. *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). The Supreme Court of Missouri has long recognized that "[p]arties to a contract for the sale of real estate may make time of the essence of the contract by express stipulation in the contract to that effect." *Johnson v. Schuchardt,* 333 Mo. 781, 63 S.W.2d 17, 19 (1933). When time is of the essence in the contract and one party fails to timely perform, specific performance is not an appropriate remedy. More recent opinions in Missouri, however, have overlooked time of the essence provisions where the party seeking to avoid specific

performance can show no change in condition or change in circumstances as a result of the delay. *Nigh v. Hickman,* 538 S.W.2d 936, 936–937 (Mo.App.1976).

■ In this case, the testimony of the Buyer's principal articulated a change in condition between the date of closing and the date of the hearing. Mr. Scheffel indicated that to compel performance now would deprive the Buyer of economic benefit because the golf season is well underway. Furthermore, he indicated that the condition of the Golf Course may be adversely affected by missing some groundskeeping deadlines set for the "middle of May." Finally, Mr. Scheffel indicated that Buyer incurred expenses in arranging the financing and procuring the check for $3.25 million for the balance of the purchase price. For these reasons, Buyer has proven that there are changes in conditions and circumstances which justify denying specific performance based upon the time of the essence clause in paragraph 7 of the Contract.

■ Buyer's request for a return of deposit and rescission is the only appropriate remedy here. The language of paragraph E of the Addendum speaks exactly to the circumstances which exist. The Debtors, for reasons this Court still finds perplexing,[14] failed to tender the deed to the Golf Course. Buyer is entitled to recover its $500,000 deposit and is entitled to rescind any obligations it may have under the Contract without fear of breach.

## CONCLUSION

Accordingly, it is

ORDERED that the Motion of Ozark Global, L.C. for an Order of Refund of Security Deposit is GRANTED and Ozark shall recover its deposit pursuant to the Contract;

IT IS FURTHER ORDERED that Ozark Global's Motion for an Order setting aside Order Approving Sale of Assets is DENIED AS MOOT;

---

13. J. Dennis O'Leary, counsel for Buyer.

14. The Court notes that if in fact the Debtors believe that their fiduciary responsibility mandated their non-performance, then such issues

should have at least been mentioned as a condition precedent to closing in the Contract (which makes no such references).

IT IS FURTHER ORDERED that Great Southern Bank's Motion to Compel Sale of Golf Course Assets is DENIED;

IT IS FURTHER ORDERED that all other relief requested by the parties is DENIED.