**In re NORTH PORT ASSOCIATES, INC., Debtor.**

**In re NORTH PORT GOLF ASSOCIATES I, L.P., Debtor.**

**Bankruptcy Nos. 93–46630–399, 94–43766–399.**

United States Bankruptcy Court, E.D. Missouri, Eastern Division.

June 28, 1995.

Steven Goldstein, St. Louis, MO, for debtors.

J. Dennis O'Leary, Dubail, Judge, P.C., St. Louis, MO.

Bonnie Clair, Office of the U.S. Trustee, St. Louis, MO.

Steven Ginther, Missouri Dept. of Revenue, Gen. Counsel's Office, Jefferson City, MO.

Francis X. Buckley, Jr., Thompson & Mitchell, St. Louis, MO.

David Going, Armstrong, Teasdale, Schlafly & Davis, St. Louis, MO.

Ried F. Holbrook, Thomas E. Osborn, Kurt S. Brack, Kansas City, KS.

John G. Young, Jr., Blumenfeld, Kaplan, Sandweiss, Marx, Ponfil & Kaskowitz, P.C., Clayton, MO.

Stephen L. Kling, Jr., Jenkins, Kling & Sauerwein, St. Louis, MO.

David M. Dare, Kramer & Frank, St. Louis, MO.

James C. Mordy, Marc E. Elkins, Morrison & Hecker, Kansas City, MO.

Milton P. Goldfarb, Newman, Goldfarb, Freyman & Stevens, P.C., St. Louis, MO.

## MEMORANDUM OPINION AND ORDER

BARRY S. SCHERMER, Chief Judge.

### INTRODUCTION

In this Memorandum Opinion and Order, the Court will review a Motion to Reconsider this Court's Order dated May 31, 1995, 182 B.R. 810, in which the Court denied a motion of a third party beneficiary of a real estate sale contract for specific performance and granted the non-breaching party's motion for a refund of its earnest money and relieved that party from further performance under the contract.

### JURISDICTION

This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" which the Court may hear and enter appropriate judgments pursuant to 28 U.S.C. § 157(b)(2)(N) & (O).

### STATEMENT OF FACTS

Great Southern Bank ("Bank") filed its Motion to Alter Memorandum Opinion and Order Dated May 31, 1995, 182 B.R. 810, or, in the Alternative for a New Trial ("Motion

to Reconsider") concerning an order of this Court as it related to a sale of Debtors', North Port Associates, Inc., and North Port Golf Associates I, L.P. (collectively "Debtors") golf course and club house. The facts are spelled out in detail in the Memorandum Opinion and Order dated May 31, 1995 and need not be restated here.

To summarize some of the most relevant facts, the Debtors entered into a Contract for Sale of the Golf Course, Club House and other property ("Contract"), with Ozark Global, L.C. ("Buyer"). Thereafter, problems arose with the Contract concerning items such as proposed easements, legal descriptions, and access to sewer lines. The Court met with the Buyer and Debtors on several occasions, assisting in resolving these preclosure disputes and assuring the parties that appropriate easements would be granted in order to help this $3.75 million sale reach finality. After hours of negotiations, hearings, hand-holding, and dispute resolution, the Court, on May 8, 1995, issued an Order Approving the Sale of Assets pursuant to 11 U.S.C. § 363 ("Order Approving Sale"). That Order served as the Court's determination that the standards for a sale under § 363 were met, in that (i) there was complete and timely notice to all creditors including those asserting liens in the real estate; (ii) all lienholders either consented to the sale or would be paid the value of their secured claim or their claim was subject to a bone fide dispute; and (iii) the $3.75 million price was fair and in the best interests of the estates.

Despite this concerted effort by the Buyer and Debtors with the full support of secured and unsecured creditors of the estate as well as the Debtors' limited partners, the Debtors failed and refused to deliver the deed to the items specified in the Contract. The reasons why the deed was not conveyed were spelled out in a letter from the Debtors to the Buyer dated May 15, 1995 and introduced as Exhibit 1–A at a hearing held on May 18, 1995.[1]

The reasons were described by the Debtors as three "operating issues:" 1) Buyer had failed to discuss the transfer of certain business licenses held by Debtors for the operation of the club house and golf course; 2) Buyer had failed to reach finality on negotiations for purchase of personal property in the club house (presumably this would include a variety of items from golf balls to the liquor inventory); and, curiously, 3) Buyer had failed to indicate whether the golf course would remain in operation.

The Debtors failure to tender a deed resulted in a hearing on the Bank's Motion to Compel the Sale.[2] At the hearing, the Bank argued that the Order Approving Sale binds the parties to perform. Rather than look at the Contract—which clearly delineates the terms of performance as well as the consequences of non performance—the Bank requests that the Court find the Order Approving Sale binding upon the terms of the parties performance.

The Court denied Bank's Motion to Compel and ruled that because of the Debtors' breach the Buyer was relieved from further obligations in the Contract. In denying the Bank's Motion, the Court also ruled that the Buyer was entitled to a refund of its earnest money deposit[3] because of the Debtors' breach.

## DISCUSSION

The Bank filed its Motion to Reconsider asking that the Court review its decision denying its Motion to Compel Sale. The Motion to Reconsider has six sections. They will be discussed in turn.

■ The Bank's first position presents further argument as to why the Order Approving Sale should be contractually binding upon the parties to the Contract. Each subpart of this position presents examples in which the Order Approving Sale allegedly supplements, modifies, or amends the Contract.

1. That hearing resulted in the Memorandum Opinion at issue here.

2. The Buyer brought on its Motion for a Refund of its previously deposited earnest money of $500,000.

3. Pursuant to the terms of the Contract and prior orders of the Court, the earnest money was being held by the Bank.

■ Certainly additional agreements were entered into between the Buyer and Debtors that were not part of the Contract. These resulted from facts first learned by the parties after a survey of the real estate was performed and included such items as: easements, licenses, and modifications of covenants. The agreements were made part of the record and were also included in the Order Approving Sale. While the Order Approving Sale may have been the vehicle for expressing these additional terms and conditions, they are on the whole de minimis to the exhaustive terms listed in the Contract. The mere inclusion of these additional specific terms which arose at the last minute should not negate the bargained for rights of the parties expressed in the Contract.

The Bank is essentially arguing that because of a few isolated terms not included in the Contract, the Court should ignore the Contract. The Court declines to do this. The Contract gave a date and a time for performance and the Debtors failed to comply.

■ The Bank also points to a paragraph in the Order Approving Sale in which the Buyer and Debtors agree to submit any post closing, future disputes as to easements to this Court. The Court simply fails to understand why such language in the Order Approving Sale would convince the Court that it should review its decision to examine the Debtors' failure to close under the rubric of the Contract.[4]

■ The Bank's second argument concerns the Court's statements that the effect of a § 363 order is "simply an order finding that the Contract meets the requirements of § 363 and grants the Debtors the authority to sell according to the terms of the contract." Memorandum Opinion at p. 7, 182 B.R. at p. 814. Upon reflection of the Bank's argument, this Court does believe that a § 363 order may compel a sale pursuant to the terms of the order and need not be done by the time consuming and costly process of an adversary proceeding. Indeed, an order approving a sale may authorize and direct the parties to close.[5] Even with such clarification, this Court's May 31, 1995 Order was premised upon the Contract in which the parties negotiated a time of the essence provision. Debtors failed to close and moreover failed to close timely.

■ The third section of the Bank's Motion to Reconsider is simply disingenuous. The Bank's Motion to Compel was essentially a request for specific performance. This Court ruled that specific performance was not available because the Contract contained a time of the essence provision which under Missouri law protected the Buyer from proven damages which would have resulted if it were compelled to perform on a date later than the scheduled closing date.

The Bank now argues that a short delay in closing on the Contract did not represent an unreasonable delay.[6] The Court notes that this is the same Bank that consistently refused to delay closing beyond May 15, 1995 arguing that it will be irreparably harmed by *any* delay in the closing date. This is the same Bank which grudgingly acquiesced to the Buyer's and Debtors' request to set the hearing to approve the sale back one week.[7] For the Bank to argue now that a delay is not prejudicial entirely contradicts its prior position in several court hearings that the closing date not be delayed because of the potential yet unspecified prejudice to the Bank.

Overlooking the Bank's disingenuous position, the assertion that the *Debtors* are entitled to specific performance is simply an incorrect understanding of the law. The Debtors failed to tender the deed pursuant to the Contract. Time was of the essence in

---

**4.** The letter of May 15, 1995 lists the "operating issues" which caused the Debtors to refuse to tender the Deed. None of these "operating issues" were part of the Order Approving Sale, nor were they ever part of the lengthy protracted discussions attended by this Court prior to the Order Approving Sale.

**5.** Section 105(a) may be invoked in order to compel compliance.

**6.** "[T]he Debtors are entitled to specific performance ... The delay of less than three days in closing the transaction does not constitute [an] unreasonable relay." Motion to Reconsider at p. 4.

**7.** The Bank would not, however, move back the date set for closing even one day.

performing the Contract and the Buyer articulated a certain change in condition and circumstance if compelled to close on a later date. The Bank cannot now question the potential damage when it had ample opportunity to do so at the hearing and did not do so.

 The Bank's fourth point concerns the harm to the estates if the Buyer and Debtors cannot be compelled to perform. This is not a situation where the Court is balancing the equities. The underlying case shall be governed by the Contract. Where one party failed to perform, the Court's decision rests on contract not equitable remedies.

 The Bank's fifth argument is closely related to the fourth in that the Bank asserts that the proposed sale "presents a unique opportunity for substantial benefit to the Debtors' estates." Motion to Reconsider at P. 5. The Bank concludes that the Court should be persuaded by the unanimous voice of the creditor community. Once again, the Bank wishes this Court to ignore the specific terms of the Contract and the rights of the Buyer which relied on the time of the essence provision. The Court declines the invitation to rule contrary to the law merely because all of the creditors desire that result.

 The Bank's final position is that "the creditors have been deprived of notice and opportunity for hearing prior to the exercise by the Debtors of the unilateral, prejudicial and 'perplexing' action of failing and refusing to produce the Deed to the Golf Course." Motion to Reconsider at p. 6.

The Bank's position lacks merit. The Court approved the sale on May 8, 1995 after lengthy hearings at which the Bank fully participated. Closing on the Contact was set seven days later on May 15, 1995. Debtors' counsel had several conversations with Buyer's counsel on May 13, 1995 concerning the issues creating an impasse to closing.[8] The Bank had its claim in excess of $3 million at stake and either failed to avail itself of the

opportunity to monitor discussions between May 8, 1995 and May 15, 1995 or did so and failed to seek an appropriate remedy prior to the May 15, 1995 closing.[9] In either event, the Bank's failure to take advantage of its opportunity in no way constitutes a deprivations of its due process rights.

## CONCLUSION

For these reasons, it is

ORDERED that the Bank's Motion to Alter Memorandum Opinion and Order Dated May 31, 1995, 182 B.R. 810, or for a New Trial is DENIED;

IT IS FURTHER ORDERED that the Court's Memorandum Opinion and Order is MODIFIED only to the extent that it states that the Buyer is entitled to rescission of the Contract,[10] such language concerning rescission is stricken.

---

**8.** These conversations are memorialized in the May 15, 1995 letter which was Exhibit 1–A at the May 18, 1995 hearing.

**9.** If the bank did avail itself of this opportunity to monitor discussions, then the Bank surely had an opportunity to request emergency relief (e.g. the appointment of a trustee to execute the deed and receive the sale proceeds) from the Court so that

the closing could have been effected on the afternoon of the scheduled May 15, 1995 closing.

**10.** The Memorandum Opinion states "Buyer is entitled to recover its $500,000 deposit and is entitled to rescind any obligations it may have under the Contract without fear of breach."