# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-30028

CHS, INCORPORATED,

United States Court of Appeals
Fifth Circuit

**FILED**
November 5, 2013

Lyle W. Cayce
Clerk

Plaintiff - Appellant

v.

PLAQUEMINES HOLDINGS, L.L.C.,

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before STEWART, Chief Judge, KING, and PRADO, Circuit Judges.

KING, Circuit Judge:

Plaintiff-Appellant CHS, Inc., and non-party South Louisiana Ethanol, L.L.C., each owned a fifty percent interest in a company whose sole asset was a tract of land. South Louisiana Ethanol filed for bankruptcy under Chapter 11 of the Bankruptcy Code, and, as part of the confirmed liquidation plan, the bankruptcy court ordered South Louisiana Ethanol to dissolve the company held jointly with CHS and to partition the tract of land. During the pendency of the required state court dissolution lawsuit, South Louisiana Ethanol sold to a third party an option to purchase all of its right, title, and interest acquired from the dissolution of the shared company. The third party then assigned its rights under the option contract to Defendant-Appellee Plaquemines Holdings, L.L.C. CHS responded by filing this suit, contending that South Louisiana

Ethanol's option contract with Plaquemines constitutes the assignment of a litigious right under Louisiana law, entitling CHS to redeem the litigious right by reimbursing Plaquemines for the cost of the option contract plus interest. The district court granted Plaquemines's motion to dismiss, holding that the law at issue did not apply to judicial sales. For the following reasons, we AFFIRM.

## I. Factual and Procedural Background[1]

In 2005, HPS Development, L.L.C. ("HPS"), purchased a decommissioned ethanol plant in Louisiana along the Mississippi River. Having decided to revitalize the plant, HPS acquired the necessary equipment and located a contractor to perform renovations. During the summer of 2006, HPS transferred the entire property and its improvements to South Louisiana Ethanol, L.L.C. ("SLE"), a wholly-owned limited liability company. SLE secured financing and executed contracts to proceed with the renovations.

In the spring of 2007, SLE selected Wachovia Securities to obtain permanent financing through syndication that would be sufficient to complete the plant. However, Wachovia was unable to raise the needed capital. Since SLE had no further funds with which to finance the renovations, it stopped construction on September 20, 2007. SLE continued to pursue funding, but to no avail. Shortly thereafter, SLE's contractor resorted to litigation.

The business venture was at a standstill. SLE owned a non-functioning ethanol plant, together with the plant's surrounding land, and it could not procure additional financing in order to progress with the business. Because

---

[1] The complete record from the underlying bankruptcy action was not included in our record, but we take judicial notice of this proceeding, *In re South Louisiana Ethanol, L.L.C.*, No. 09-12676 (Bankr. E.D. La. filed Aug. 25, 2009), since it contains facts relevant to our analysis.

No. 13-30028

the ethanol plant had never been completed, the company had no income from its business operations. Essentially, SLE's only value was in its limited assets.

On August 25, 2009, SLE voluntarily filed for Chapter 11 bankruptcy. Over a year later, following lengthy negotiations with several creditors, SLE submitted a Chapter 11 plan (together with a disclosure statement) proposing a complete liquidation of SLE's assets. SLE ultimately filed two amended plans and disclosure statements. The bankruptcy court confirmed the final liquidation plan in April 2011.

Among other things, the plan required that SLE institute legal proceedings to dissolve CHS-SLE Land, L.L.C. ("Land"), a company that it held jointly with CHS, L.L.C. ("CHS"), whose sole asset was 4.5 acres of land located along the river. SLE owns a fifty percent interest in Land. The confirmed Chapter 11 plan mandated that all of the assets of SLE (including its interest in Land) be sold as a unit. By the plan's express terms, the sale would be subject to "application, notice, and Bankruptcy Court approval."

SLE filed a petition in state court to dissolve Land in May 2011, claiming that the business purpose of the partnership had been frustrated and that the parties could not agree on a plan of dissolution. CHS resisted the dissolution. While the state court dissolution proceeding was pending, SLE proceeded to implement the confirmed plan. In June 2011, the bankruptcy court approved the bidding procedure for the sale of SLE's assets, which included an "option to purchase all rights, title, and interest [SLE] may have in the dissolved limited liability company, known as [Land], once accomplished judicially or otherwise." CHS and others submitted bids, and the winning bid was submitted by J.A.H. Enterprises ("JAH"). The bankruptcy court approved the sale in July 2011, and ordered the parties to close the sale on a later date. JAH then assigned its rights and interests in Land to Defendant-Appellee Plaquemines Holdings, L.L.C. ("Plaquemines").

3

No. 13-30028

As part of the sale, SLE and Plaquemines entered into an option contract which provided that Plaquemines would pay $202,000 for an exclusive option to purchase all right, title, and interest distributed to SLE as a result of the dissolution of Land.  The agreement further provided that the acquisition price would be $1, in addition to the option price already paid.  Plaquemines and SLE finalized the sale on August 23, 2011, and on September 9, a creditor filed a motion in bankruptcy court to distribute proceeds from the sale conducted by SLE.  CHS did not learn that the sale had closed or that Plaquemines had purchased the sale items until the motion to distribute was filed.

On September 22, 2011, CHS filed this suit, alleging that the sale between SLE and Plaquemines constituted the assignment of a litigious right and that it was entitled to redeem that right under Louisiana law. Plaquemines filed a motion to dismiss for failure to state a claim, which the district court granted.  The district court held that the Louisiana statute governing the sale of litigious rights, Louisiana Civil Code Article 2652 ("Article 2652"), did not apply to a sale made "within the framework of a bankruptcy case under Chapter 11 of the Bankruptcy Code," and thus, CHS had failed to plead a plausible claim for relief.  CHS timely appealed.

## II. Standard of Review

A dismissal for failure to state a claim is reviewed de novo.  *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 450 (5th Cir. 2013).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  The complaint need not contain detailed factual allegations, but it must provide more than conclusions.  *Gearlds*, 709 F.3d at 450.

No. 13-30028

When evaluating issues of state law, federal courts "look to the final decisions of that state's highest court." *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010). "In the absence of such a decision, 'we must make an *Erie* guess and determine, in our best judgment, how [the highest state court] would resolve the issue if presented with the same case.'" *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 954 (5th Cir. 2009) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007)). If we are to make an *Erie* guess with respect to the application of Louisiana law, we must employ the jurisdiction's "civilian methodology" and "examine primary sources of law: the constitution, codes, and statutes." *Bradley v. Allstate Ins. Co.*, 620 F.3d 509, 517 n.2 (5th Cir. 2010). We may also consider intermediate state appellate court decisions, although we are not bound by them. *Id.*

### III. Discussion

The parties' dispute focuses on whether SLE's sale of the option contract to Plaquemines constitutes the assignment of a litigious right, and, if so, whether CHS may redeem that right by reimbursing Plaquemines for the price it paid for the option contract plus interest. Under Louisiana law,

> When a litigious right is assigned, the debtor may extinguish his obligation by paying to the assignee the price the assignee paid for the assignment, with interest from the time of the assignment.
>
> A right is litigious, for that purpose, when it is contested in a suit already filed.

La. Civ. Code Ann. art. 2652 (2013). The law is aimed at preventing unnecessary litigation by reducing the ability of third parties to buy and sell legal claims for profit. *Smith v. Cook*, 180 So. 469, 470 (La. 1937). Article 2652 "enable[s] the defendant to take the place of the purchaser of the suit against him, by paying the price [the purchaser] has paid for it, with interest. Thereby the litigation is ended, and the object of the law attained." *Id.* (quoting *Leftwich v. Brown*, 4 La. Ann. 104, 105 (1849)).

5

No. 13-30028

The district court held that an exception to Article 2652 barred CHS from redeeming the litigious right, finding it unnecessary to consider whether SLE's option contract with Plaquemines constitutes the assignment of a litigious right or if CHS is a debtor with an obligation to Plaquemines within the meaning of Article 2652.[2] We first consider these threshold issues to determine whether Article 2652 applies to SLE's sale of the option contract. Concluding that it does, we analyze whether a sale made pursuant to a Chapter 11 liquidation plan is a judicial sale exempt from Article 2652.

**A. Assignment of a Litigious Right**

Plaquemines argues that there was no assignment of a litigious right because CHS is not a "debtor" within the meaning of the law. Plaquemines claims that because it purchased an option contract that granted it the option to buy the assets SLE receives once the dissolution of Land is complete, CHS does not have any "obligation" that it can "extinguish." Additionally, Plaquemines argues that the option contract is not a "litigious right." Since these arguments overlap, we address them together.

Article 2652 affects the ability of a "debtor" to "extinguish his obligation" by paying to the assignee the price that the assignee had paid for the right. Under Louisiana law, "debtor" is synonymous with "obligor." La. Civ. Code Ann. art. 1756 cmt. c. The law further defines an obligation as a "legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another, called the obligee. Performance may consist of giving, doing, or not doing something." *Id.* art. 1756. When an unsettled obligation is subject to litigation and assigned during the pendency of that

---

[2] Plaquemines also argues that the doctrine of res judicata bars CHS from litigating this matter. Like the district court, we do not reach the merits of this argument because we hold that the judicial-sale exception applies, preventing CHS from redeeming the litigious right.

litigation, Article 2652 allows the obligor to extinguish the obligation to give, do, or not do whatever is at issue.

This point is best illustrated by *Crain v. Waldron*, 27 So. 2d 333 (La. 1946). *Crain* involved a dispute between a father and his ten children over each individual's ownership stake in a plot of land. *Id.* While the lawsuit was pending, the father sold his interest in the land to three individuals who substituted into the lawsuit as plaintiffs. *Id.* at 334. During the course of trial, the children sought to redeem their father's claim to the land under Article 2652, alleging that their father had assigned a litigious right when he sold his interest in the land. *Id.* The substitute plaintiffs alleged that they had not received a litigious right "since all the parties admitted the others' rights to a partition." *Id.* The court rejected this argument, since—the undisputed right to a partition notwithstanding—the parties nevertheless disagreed about the portion of the property to which each individual was entitled out of the partition. *Id.*

Here, SLE is in a position analogous to the father in *Crain*; Plaquemines is in a position analogous to the substitute plaintiffs; and CHS is in a position analogous to the children. After SLE brought suit to dissolve Land, Plaquemines bought an option contract to purchase the assets SLE will receive for its fifty percent interest in Land. While SLE indisputably owns a fifty percent interest in the company, the exact contours of that interest were not settled at the time SLE sold the option contract to Plaquemines. Indeed, SLE's dissolution petition specifically stated that "a perpetual deadlock exists concerning the operation of [Land]" and that "the parties have not agreed on a plan of dissolution of [Land]." Under *Crain*, because the nature of each company's rights are unsettled, there has been an assignment of a litigious right.

No. 13-30028

Plaquemines counters that *Crain* supports its position that it has not received a litigious right.  Neither CHS nor SLE dispute each other's fifty percent ownership interest in Land, but the issue in *Crain* was the size of each party's share.  27 So. 2d at 334.  However, unlike the parties in *Crain*, CHS and SLE contested whether dissolution was the appropriate remedy.  This case presents the opposite set of facts, but it is similar in that the parties still legally dispute the precise nature of the other's rights.  "[A] right transferred after suit is instituted and an answer filed thereto, and before the judgment therein is final, is a litigious right, since there is a suit and contestation thereon." *Calderera v. O'Carroll*, 551 So. 2d 824, 826–27 (La. Ct. App. 1989) (quoting *Hawthorne v. Humble Oil & Ref. Co.*, 210 So. 2d 110, 112 (La. Ct. App. 1969)).  Therefore, the right assigned—the option to purchase the asset SLE receives from the dissolution of Land—was litigious.

**B. The Judicial-Sale Exception**

The Civil Code does not expressly state whether there is an exception to Article 2652, but such an exception may be found elsewhere in Louisiana law.  The Louisiana Code of Civil Procedure describes the effect of adjudications following judicial sales, stating that "[t]he adjudication transfers to the purchaser all the rights and claims of the judgment debtor as completely as if the judgment debtor had sold the property."  La. Code Civ. Proc. Ann. art. 2371 (2013).  Additionally, the Louisiana Revised Statutes provide that a "sheriff's act of sale . . . shall conclude with the recital of the sale and transfer by the sheriff to the purchaser of all of the rights which the former owner had in the property sold."  La. Rev. Stat. Ann. § 13:4353 (2013).

Article 2652, Article 2371, and § 13:4353 are not to be read in isolation, as the latter two create an exception to Article 2652.  This exception has its roots in an 1828 decision, *Hughes v. Harrison*, 7 Mart. (n.s.) 227 (La. 1828). *Hughes*, relying on former Articles 690 and 694 of the Louisiana Code of

8

No. 13-30028

Practice, which are presently codified as Article 2371 and § 13:4353, respectively, explains that property sold at auction in a sheriff's sale does not carry with it certain legal restrictions. *Id.* at 227–28. The Louisiana Supreme Court later applied *Hughes* to Article 2652, then codified as Article 2622, in *Early v. Black*, 12 La. 205 (1838). Under *Early*, Article 2652 only applies when "[t]he transfer . . . [is] a conventional assignment, between individuals capable of contracting." *Id.* at 206. However, when property is sold pursuant to "an adjudication by a public officer, at a forced sale, made by order of a competent tribunal," then Article 2652 has no effect. *Id.* Notably, *Early* does not create a narrow exception that applies only to sale by a sheriff's auction, as the literal language of § 13:4353 would suggest. Instead, the exception is described broadly as including judicial sales.

Almost eighty years later, *Bluefields S.S. Co. v. Lala Ferreras Cangelosi S.S. Co.*, 63 So. 96 (La. 1913), revisited *Early* in order to determine Article 2652's potential application to a receiver's sale of property as part of the liquidation of a company. In *Bluefields*, a plaintiff sued the defendant and thereafter went into receivership. *Id.* The receiver sold the original plaintiff's interest in the lawsuit to a party that subsequently substituted itself into the action as plaintiff. *Id.* at 96–97. On appeal, the defendant sought remand so that it could avail itself of the redemption right under Article 2652, arguing that the sale by the receiver constituted the assignment of a litigious right, thereby bringing the substitute plaintiff's claim within Article 2652. *Id.* The Louisiana Supreme Court rejected the defendant's argument, holding that Article 2652 only applies to a "conventional assignment[.]" *Id.* at 97. The court concluded that the sale "was a judicial sale, made by the receiver appointed by a competent court for the express purpose of executing its orders in the receivership proceedings of the plaintiff company, and the sale made by him was made under an order of that court." *Id.* Accordingly, the sale was not a

No. 13-30028

"conventional assignment," as contemplated by Article 2652, and was exempt from redemption.

The holding of *Bluefields* and the statutory scheme on which it rests remain undisturbed. The district court properly applied these legal principles and concluded that the sale of SLE's fifty percent share in Land was a judicial sale, exempt from Article 2652. The district court held that "the Bankruptcy Court's supervision of the auction and approval of the Sale serve as more than adequate safeguards of the policy interests enshrined in Article 2652." On this basis, the district court held that CHS could not maintain a cause of action under Article 2652. A review of the Bankruptcy Code confirms the reasoning of the district court and reveals that a sale made pursuant to a Chapter 11 liquidation plan falls within the parameters of the judicial-sale exception.

Chapter 11 of the Bankruptcy Code permits a debtor to reorganize or liquidate all or substantially all of its assets. *See* 11 U.S.C. § 1123(a)(5)(B) & (D) (2012). Under Chapter 11, a debtor may file a voluntary petition for bankruptcy, *see id.* § 301(a), or creditors may initiate an involuntary proceeding against a debtor, *see id.* § 303. After filing a petition, depending on the specific circumstances of the debtor, the bankruptcy court may appoint a trustee or the debtor may remain in possession and assume all of the legal responsibilities of a trustee. *Id.* § 1107(a); *Compton v. Anderson (In re MPF Holdings US LLC)*, 701 F.3d 449, 453 (5th Cir. 2012); *In re Triangle Chems., Inc.*, 697 F.2d 1280, 1283–84 (5th Cir. 1983). Should the debtor assume the responsibilities of the trustee as the debtor-in-possession, it must shed the role of businessman and assume a new role. After this transformation,

> [T]he debtor, though left in possession by the judge, does not operate [the business] as it did before the filing of the petition, unfettered and without restraint. . . . Rather, [a] debtor in possession holds its powers in trust for the benefit of creditors. The

10

No. 13-30028

creditors have the right to require the debtor in possession to exercise those powers for their benefit.

*In re Hughes*, 704 F.2d 820, 822 (5th Cir. 1983) (internal quotation marks and citations omitted). Although the debtor-in-possession is not a receiver or judicial liquidator under Louisiana law, his role is remarkably similar.[3]

---

[3] The duties of a trustee in a Chapter 11 liquidation proceeding are described in various provisions of the Bankruptcy Code. Under § 704, the trustee must, among other things:

> (2) be accountable for all property received; . . . [(5)] examine proofs of claims and object to the allowance of any claim that is improper; . . . (8) if the business of the debtor is authorized to be operated, file . . . periodic reports and summaries of the operation of such business . . .; (9) make a final report and file a final account of the administration of the estate with the court and with the United States trustee . . . .

11 U.S.C. § 704(a). Under § 1106, the trustee shall also, in relevant part:

> (2) . . . [F]ile the list, schedule, and [disclosure] statement . . . [(3)] investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business . . . [(4)] file a [reorganization] plan . . . (6) for any year for which the debtor has not filed a tax return required by law, furnish, without personal liability, such information as may be required by the governmental unit with which such tax return was to be filed, in light of the condition of the debtor's books and records and the availability of such information; (7) after confirmation of a plan, file such reports as are necessary . . . .

*Id.* § 1106(a). Additionally, a trustee is authorized to initiate lawsuits, *see id.* § 323; enter into transactions, including for the use, sale, or lease of the property of the estate, with or without notice and hearing, depending on the circumstance, *see id.* § 363(c); and operate the debtor's business, *see id.* § 1108.

These duties are comparable to those of a receiver or judicial liquidator under Louisiana law. A receiver has

> [F]ull authority: (1) To demand, collect, sue for and recover, in the name of the corporation, the debts and property of the corporation, and he may be sued in the same manner; (2) To compromise, compound and settle claims . . .; (3) To sell and convey . . . the property of the corporation . . .; (6) To carry on temporarily the business of the corporation . . .; (7) To pay all debts and liabilities . . .; (12) To file federal, state and local tax and information returns . . . .

11

No. 13-30028

In order to successfully conclude a Chapter 11 proceeding, the debtor (or a creditor) must file a plan of reorganization (or liquidation), *see* 11 U.S.C. § 1121(a) & (c), accompanied by a disclosure statement that includes, inter alia, the details of the debtor's financial situation leading up to bankruptcy, *see id.* § 1125(a) & (b). The creditors and parties in interest will be given the opportunity to vote to accept or reject the plan. *Id.* § 1126. Finally, the bankruptcy court must enter an order confirming the plan for it to become effective. *Id.* § 1129. Confirmation will only take place so long as several statutory requirements are met. *Id.* § 1129(a). These include the requirement that each holder of an impaired class of claims or interests receives at least what it would have received if the debtor were liquidated under Chapter 7. *See id.* § 1129(a)(7). In addition, under the absolute priority rule, a dissenting class of unsecured creditors must be provided for in full before any junior class can retain any property under a Chapter 11 plan. *See id.* § 1129(b)(2)(B)(i); *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441–42 (1999). Lastly, the court must find that the plan is "fair and equitable." 11 U.S.C. § 1129(b)(1).

The legal ramifications of a confirmed reorganization plan are highly significant. "[A] bankruptcy court's order confirming a plan of reorganization is given the same effect as a district court's judgment on the merits for claim preclusion purposes." *Eubanks v. Fed. Deposit Ins. Corp.*, 977 F.2d 166, 170 (5th Cir. 1992). Thus, a confirmed liquidation plan is not simply a plan to sell assets that has been approved by the court; the plan is effected by a direct order from the court that mandates the sale.

---

La. Rev. Stat. Ann. § 12:145(C); *see also id.* §§ 12:146(C) (granting a judicial liquidator in dissolution proceedings powers enumerated in §12:145(C)); 12:152(B) ("[T]he receiver shall have the powers of a judicial liquidator.").

No. 13-30028

CHS argues that the bankruptcy court's orders approving the sale of SLE's assets, including the sale of the option contract, did not *direct* the sale but only *approved* the sale, and that the court provided limited judicial oversight.    Thus, CHS contends that these sales cannot be considered exempted judicial sales.  In support of this proposition, CHS relies on *Gekas v. Pipin (In re Met-L-Wood Corp.)*, 861 F.2d 1012, 1016 (7th Cir. 1988), and *In re North Port Associates., Inc.*, 182 B.R. 810, 813–14 (Bankr. E.D. Mo. 1995). However, both of these cases discuss a debtor's sale of assets pursuant to 11 U.S.C. § 363.  Whatever may be the case with respect to the effect under Article 2652 of varying degrees of judicial involvement in § 363 sales (as to which we express no opinion), the sale of assets at issue here was effected by an order confirming a Chapter 11 plan and subsequent orders pursuant to that plan. *Cf. Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 37 n.2 (2008) (distinguishing between pre-confirmation sales under § 363 and a confirmed Chapter 11 plan); *In re Jasik*, 727 F.2d 1379, 1382–83 (5th Cir. 1984) (same); *In re Braniff Airways, Inc.*, 700 F.2d 935, 940 (5th Cir. 1983) (holding that a debtor cannot "short circuit the requirements of Chapter 11 for confirmation of a reorganization plan" by selling substantially all assets under § 363). The order approving the final sale to JAH, prior to its assignment to Plaquemines, noted that the sale was a liquidation of assets meant to "assist and implement the terms of SLE's Amended Plan of Reorganization by Liquidation . . . confirmed April 19, 2011[.]"

Admittedly, the district court erroneously referenced § 363 when finding that the sale had received sufficient judicial scrutiny, which explains CHS's argument concerning § 363 sales.  Additionally, the bankruptcy court's order approving the final sale twice mentioned that the purchaser was a "good faith purchaser under [§] 363(m) of the Bankruptcy Code."  However, this does not detract from the fact that the sale was included in the confirmed plan, and a

confirmed plan, as previously discussed, is subject to a myriad of statutory requirements and is an order of the court given res judicata effect.

Turning to SLE's sale of the option contract to Plaquemines, we find that the judicial-sale exception to Article 2652 applies. We begin by noting that SLE was completely insolvent and incapable of generating revenue from the operation of its business, i.e., making ethanol, when it entered bankruptcy. As a matter of Louisiana law, financial desperation alone cannot transform a conventional sale into a forced sale for the purposes of the judicial-sale exception. *See generally Sanders v. Ditch*, 34 So. 860, 866 (La. 1903) ("[I]t might happen that a person unable, for one reason or another, to prosecute a just claim, would in that way be enabled to realize something, whereas, if left to himself, he would get nothing."). Our decision does not rest on SLE's financial circumstances, but rather on the legal nature of the bankruptcy proceeding. Nonetheless, an understanding of the company's finances provides a practical context for the decisions that followed in the bankruptcy proceeding. While SLE filed under Chapter 11 and a reorganization was a legal possibility, it was never a viable option. SLE lacked the ability to produce ethanol, so it could not continue to run its business and pay its creditors, making it highly improbable that a reorganization plan could have been confected, let alone approved. CHS argues that SLE was "free to choose" the manner of its reorganization; however, an understanding of SLE's business and the statutory structure under which it operated once in bankruptcy reveals that it was not free to reorganize. SLE was effectively compelled to liquidate all of its assets.

Once in bankruptcy, SLE ceased operating as an independent business and began functioning within the strict parameters of the Bankruptcy Code. As a debtor-in-possession, SLE's role radically changed; its involvement in the ultimate decision to sell was similar, if not identical, to the role of a receiver or

judicial liquidator under Louisiana law.  In acting as a functional receiver, SLE fits within *Bluefields*'s and *Early*'s requirement that the sale be made by a "public officer." *Bluefields*, 63 So. at 97; *Early*, 12 La. at 206.  In this capacity, SLE was bound by law to ensure that each creditor would receive at least what it would have received if the proceeding had gone through Chapter 7 liquidation.

Once the liquidation plan was confirmed by court order, the court then entered a second order describing the auction procedures and a third order approving the final sale to Plaquemines.  Not only was the sale effectuated by three court orders, but the bankruptcy court was involved in the planning and execution of the final sale.  SLE was bound to comply.  This was a forced sale by a competent tribunal.  *See, e.g.*, *Early*, 12 La. at 206.

The sale of a debtor's property pursuant to a confirmed Chapter 11 liquidation plan, even when performed by the debtor as a debtor-in-possession, is a compelled judicial sale.  The sale is arranged and structured by an individual or entity with duties akin to those of a receiver under Louisiana law; subject to the stringent requirements of the United States Bankruptcy Code; and, most importantly, court-ordered.  After the bankruptcy court confirmed SLE's plan, SLE was bound to sell an option to purchase all of its interests, rights, and title flowing from the dissolution of Land.  This sale fits squarely within the statutory judicial-sale exception to redemption, as described by *Bluefields* and its predecessors.  As such, CHS may not redeem the litigious right through Article 2652.

## IV. Conclusion

For the aforementioned reasons, we AFFIRM the order of the district court dismissing CHS's complaint with prejudice.

No. 13-30028

EDWARD C. PRADO, Circuit Judge, dissenting:

I agree with the majority's analysis and conclusion that the right that SLE assigned to Plaquemines was litigious. I must respectfully disagree with my colleagues, however, that the sale falls within the parameters of the judicial-sale exception.

The majority does not dispute that SLE *voluntarily* filed for Chapter 11 bankruptcy and submitted a Chapter 11 plan proposing a complete liquidation of its assets. Yet, the majority ignores this fact and focuses instead on the legal nature of the bankruptcy proceeding, and SLE's operation, once it was in bankruptcy. For example, while acknowledging that "financial desperation alone cannot transform a conventional sale into a forced sale for the purposes of the judicial-sale exception," Majority Op. at 14, the majority appears to suggest that financial desperation during a bankruptcy proceeding entered into voluntarily can indeed result in forced sales. *See id.* ("[A]n understanding of the company's finances provides a practical context for the decisions that followed *in the bankruptcy proceeding*." (emphasis added)); *id.* ("[A]n understanding of SLE's business and statutory structure under which it operated *once in bankruptcy* reveals that it was not free to reorganize. SLE was effectively compelled to liquidate all of its assets." (emphasis added)). I find that such a focus on the bankruptcy proceeding, rather than on SLE's decision to enter bankruptcy voluntarily, is a misplaced focus on the means by which the sale is achieved rather than on the initial decision to sell.

The focus should be on the decision to sell and its underlying incentives. As the district court noted, Article 2652 seeks to "remov[e] the financial incentive from the assignment of litigious rights." *CHS, Inc. v. Plaquemines Holdings, LLC*, 484 B.R. 302, 307–08 (E.D. La. 2012) (citing *U.S. v. 12,918.28 Acres of Land*, 50 F. Supp. 712, 721–23 (W.D. La. 1943)). "[T]he lawmakers have deemed it advisable from a standpoint of equity and public policy, in the

16

sale of a matter in litigation, to favor the party against whom the matter in litigation is transferred over one who speculates in law suits." *Smith v. Cook*, 180 So. 469, 472–73 (La. 1938). The judicial sales found in *Bluefields*, *Early*, and *Hughes* were completely devoid of any such financial incentive. *See Bluefields S.S. Co. v. Lala Ferraras Cangleosi S.S. Co.*, 63 So. 96 (La. 1913) (receivership proceeding); *Early v. Black*, 12 La. 205 (1838) (sheriff's sale); *Hughes v. Harrison*, 7 Mart. (n.s.) 227 (La. 1828) (sheriff's sale). Those sellers did not pursue any financial incentive, much less speculate in their respective law suits. They had no part in the decision to sell whatsoever; rather, a competent tribunal exercised the initial decision-making authority to sell. *See, e.g.*, *Early*, 12 La. at 206 (finding that the purchaser held title by "an adjudication by a public officer, at a forced sale, made by order of a competent tribunal").

Here, financial desperation alone drove SLE's decision to enter Chapter 11 bankruptcy and liquidate its assets. SLE found itself in a position where the financial incentive to file for Chapter 11 bankruptcy and liquidate its litigious right was greater than the financial incentive to continue its operations and to maintain its claim against CHS. The Supreme Court of Louisiana has recognized such a financially driven decision as one reason why a plaintiff may decide to sell its litigious right rather than continue prosecution. *Sanders v. Ditch*, 34 So. 860, 866 (La. 1903) ("[I]t might happen that a person unable, for one reason or another, to prosecute a claim, would [by the sale of his litigious right] be enabled to realize something, whereas, if left to himself, he would get nothing."). That SLE ultimately pursued this financial incentive through Chapter 11 does not lessen the financial incentives that guided its initial decision to liquidate. Nor does it alleviate the financial incentive concern that Article 2652 seeks to remedy.

No. 13-30028

No competent tribunal compelled SLE's initial decision to enter Chapter 11 bankruptcy and liquidate its assets. Instead, SLE liquidated its assets through bankruptcy to realize something, rather than nothing, for its litigious right. Such a financially motivated sale is precisely what Article 2652 seeks to remedy, and it should not fall within the purview of the judicial-sale exception. Accordingly, I respectfully dissent.